IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT LUKEN, individually, and | ) | |
| LUKEN INVESTMENT COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 13-cv-0991-MJR-PMF |
| | ) | |
| INDIANA INSURANCE CO., | ) | |
| AMERICAN STATES INS. CO., | ) | |
| AMERICAN ECONOMY INS. CO., | ) | |
| FIRST NATIONAL INS. CO., and | ) | |
| LIBERTY MUTUAL INS. CO., | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.     **Introduction**

Robert Luken and Luken Investment Company ("the Lukens") were named as defendants in three separate class action suits filed in the Circuit Court of Madison County, Illinois in March 2013.  The three Illinois class actions were:  (1) *Bueker v. Robert Luken, et al.,* Case No. 13-L-0276; (2) *Straeter v. Robert Luken, et al.,* Case No. 13-L-0376; and (3) *Lindow v. Robert Luken, et al.,* Case No. 13-L-0390.  The plaintiffs in those actions were owners of real property in Madison County, Illinois who alleged that they were victims of a conspiracy (committed by the Lukens, former Madison County Treasurer Fred Bathon and others) to suppress competitive bidding on interest rates for delinquent property tax debt.  The plaintiffs sought to recover monetary damages for the defendants' allegedly wrongful conduct taking place from 2003 through 2009.

In August 2013, the Lukens filed a declaratory judgment action in Madison County Circuit Court against five insurance companies who allegedly issued to the Lukens a comprehensive commercial liability insurance policy, identified as "Policy No. 01 CC 148849" and attached to the state court complaint. The Lukens asked the Illinois state court to find that Policy No. 01 CC 148849 affords coverage to the Lukens, and that the five insurance company defendants are obligated to defend the Lukens in the three class actions (*Bueker, Straeter* and *Lindow*).

The insurance companies – (1) Indiana Insurance Company, (2) American States Insurance Company, (3) American Economy Insurance Company, (4) First National Insurance Company, and (5) Liberty Mutual Insurance Company – timely removed the Lukens' declaratory judgment action to this District Court on September 25, 2013, invoking federal subject matter jurisdiction under the diversity statute, 28 U.S.C. 1332. On threshold review of the case, the undersigned directed the removing defendants to clarify certain facts needed to ascertain that diversity jurisdiction lies.

The removing defendants (collectively, "the Insurers") filed an amended removal notice clarifying the jurisdictional questions. The Lukens moved to remand the case to state court, a motion the undersigned denied on December 23, 2013. Now before the Court are the parties' cross-motions for summary judgment (Docs. 23 and 26), which ripened with the filing of the final permitted reply brief on March 10, 2014.

In the pending motions, the Lukens ask the Court to order their commercial general liability insurance carrier, whom they refer to in the singular as Liberty Mutual Group, to defend the three state court class actions ("the Underlying Suits").

Conversely, the Insurers maintain that the claims alleged in the Underlying Suits do not implicate any coverage under any commercial general liability policies issued to the Lukens, so this Court should declare that the Insurers owe no duty to defend or indemnify the Lukens in the Underlying Suits.  As explained in Section C below, a consolidated amended complaint was filed in the state court litigation in April 2014 and has become the operative pleading for this Court's analysis.  Analysis begins with reference to the standards applicable to summary judgment.

**B.      Standards Governing Summary Judgment**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* **743 F.3d 1101, 1105 (7th Cir. 2014),** *citing* **FED. R. CIV. P. 56(a).  Accord Anderson v. Donahoe,** **699 F.3d 989, 994 (7th Cir. 2012).**  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986). Accord Olson v. Morgan, -- F.3d --, 2014 WL 1687802, *4 (7th Cir. April 30, 2014).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *Anderson,* **699 F.3d at 994; Righi v. SMC Corp.,** **632 F.3d 404, 408 (7th Cir. 2011); Delapaz v. Richardson,** **634 F.3d 895, 899 (7th Cir. 2011).**  When cross-motions for summary judgment are filed, "we look to the burden of proof that each party would

bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of America*, **499 F.3d 640, 643 (7th Cir. 2007).**

As the United States Court of Appeals for the Seventh Circuit has explained, on cross-motions for summary judgment, the Court must construe "the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Durable Mfg. Co. v. U.S. Department of Labor*, **578 F.3d 497, 501 (7th Cir. 2009),** *citing Rickher v. Home Depot., Inc.*, **535 F.3d 661, 664 (7th Cir. 2008).** *Accord Jefferson v. United States*, **546 F.3d 477, 480 (7th Cir. 2008).** Bearing those procedural standards in mind, the Court reviews the facts and allegations, starting with the critical details of the three state court class actions.

### C.   <u>Overview of Underlying Litigation</u>

Under Illinois law, if a property owner falls delinquent on his real estate taxes for a specified period of time, the county can sell the property at a public auction (referred to as a "tax sale") to try to recover the delinquent taxes.  *In re County Treasurer*, **881 N.E.2d 576, 580 (Ill. App. 2007),** *citing* **35 ILCS 200/21-110 (West. 2006).**  Before the purchaser at the tax sale gets title to the property, the property owner has a right to "redeem" the property by paying to the county clerk the delinquent taxes, plus the costs, fees, and interest.  *Id., citing* **35 ILCS 200/21-345, 200/21-350.**  If the owner validly redeems the property, then the tax purchaser is entitled to the redemption money only, and the owner keeps title to the property.  If the owner fails to redeem the property

within the set time-frame, then the tax purchaser can petition the court for the deed to the property. *Id.*

The pleadings in the Underlying Suits explained the Madison County tax sale system. Individual parcels of property are offered for sale by auction.  The process contemplates that potential buyers will bid competitively on the interest rate they will be permitted to apply to the delinquent tax debt.  Illinois law requires that the bidding start at a maximum annual interest rate of 18% and permits bidding to go down to 0%.  The rate bid establishes the initial penalty rate that the property owner must pay to redeem his property.  The person who bids the lowest interest rate is awarded a lien certificate for the property.

The Seventh Circuit described the Illinois tax sale process in a case involving Cook County's system:

> When an owner of property … fails to pay his property tax on time, the amount of tax past due becomes a lien on the property.  The County sells its tax liens at auctions.  The bids at the auctions are stated as a percentage of the taxes past due.  The percentage that a bidder bids, multiplied by the amount of past-due taxes (plus any interest due on them), is the "penalty" that the bidder demands from the owner to clear the lien.  The winning bidder is the bidder who bids (that is, is willing to accept) the lowest penalty – often zero percent of the tax due, meaning that the bidder is offering to pay the County the … past-due taxes and receive in exchange the lien.
>
> The taxpayer has [a specified amount of time] in which to erase the lien by paying the winner of the auction … the past-due taxes that the winner had paid the County, plus the penalty (if any).  If the taxpayer fails to redeem by paying what he owes, the purchaser of the lien can obtain a tax deed to the property and thus become the property's owner.  In deciding which tax liens … to bid for and how much to bid…, the would-be tax lienor is looking for properties whose owners are unlikely to redeem them … and which are worth more than the past-due taxes on them.

*BCS Services, Inc. v. BG Investments, Inc.,* 728 F.3d 633, 637 (7th Cir. 2013).   *See also Phoenix Bond & Indemnity Co. v. Bridge,* 477 F.3d 928 (7th Cir. 2007) ("Failure to pay [Illinois] property taxes creates a lien for the amount of the unpaid tax (including interest), plus a penalty....  The bids are stated as percentage penalties that the owner must pay (on top of the taxes and interest) to the winning bidder to clear the lien."), *cert. granted,* 552 U.S. 1087 (2008), *and affirmed,* 553 U.S. 639 (2008).

In the Underlying Suits, the plaintiffs alleged that while Fred Bathon was Treasurer of Madison County, he entered into a conspiracy to rig the bidding on the sales, so that the members of the conspiracy -- including the Lukens -- would win the auctions at an interest rate at or near the 18% statutory maximum.  This rigged system resulted in property owners being forced to pay artificially-inflated interest rates to redeem their properties and avoid foreclosure.

The complaints in the Underlying Suits prayed for similar, but slightly different, relief.  The *Straeter* plaintiffs sought recovery of actual damages, treble damages, punitive damages, attorneys' fees and costs.  The *Lindow* plaintiffs sought recovery of a refund[1], plus treble damages, attorneys' fees and costs.  The *Bueker* plaintiffs sought recovery of monetary damages for all losses suffered as a result of the defendants' conduct, including treble damages, civil penalties, attorneys' fees and costs.

The complaints in the Underlying Suits defined similar, but slightly different, classes.  The *Straeter* complaint (Doc. 8-2, p. 52) defined the class members as "all

---

[1]     The refund was comprised of the difference between the amount each plaintiff actually paid to redeem his property (at the allegedly inflated penalty rate) and the amount it would have cost him to redeem the property at a reasonable penalty rate.

persons whose real estate tax debt on property located in Madison County, Illinois, was sold to [any of the named defendants …] at artificially high interest rates … in 2003, 2004, 2005 2006, 2007 and 2008. The *Lindow* complaint (Doc. 8-3, p. 30) defined the class members as "all persons who owned any parcel of property that was sold at a Madison County Tax sale auction in the years 2005, 2006, 2007 and 2008 with respect to which a Certificate of Purchase was obtained at such auction in response to a penalty rate bid of 12% or higher." The *Bueker* complaint (Doc. 8-2, p. 42) defined the class members as all "persons who owned real property in the County of Madison and State of Illinois who had a Tax Sale Certificate issued with respect to their property that was purchased by a defendant during the Class Period" (which, in turn, was defined as "at least the beginning of 2005 and continuing through 2009," Doc. 8-2, p. 39).

In late April 2014, six weeks after the briefing had closed on the summary judgment motions and while the undersigned was in the process of drafting this Order, the Lukens sought leave to file a copy of an April 2014 consolidated complaint from the underlying state court actions. On May 6, 2014, the Insurers responded that they had no objection. On May 8, 2014, the undersigned Judge permitted the Lukens to supplement the record before this Court by filing the amended complaint (80 pages with exhibits), which apparently the state court plaintiffs were given leave to file on April 2, 2014 (see attachments to Doc. 34). Throughout the remainder of this Order, the Court refers to the current, operative, amended complaint in the now-consolidated state court class action as the "Consolidated Complaint" and refers to the Underlying Suit in the singular.

The Consolidated Complaint designates the claims as follows:

Count I –       Civil Conspiracy
Count II –      Money Had and Received
Count III –     Violation of Section 3(1) of the Illinois Antitrust Act
Count IV –      Violation of Section 3(2) of the Illinois Antitrust Act
Count V –       Violation of Section 3(3) of the Illinois Antitrust Act
Count VI –      Breach of Fiduciary Duty (Bathon)
Count VII –     Action on Bathon's Bond as Treasurer and Collector
Count VIII –    Breach of Fiduciary Duty (Von Nida)
Count IX –      Action on County Clerk's Bond
Count X –       Breach of Fiduciary Duty (Dunstan)
Count XI –      Sale in Error
Count XII –     Respondeat Superior

The Consolidated Complaint defines the class sought to be certified as "all persons who owned any parcel of property that was sold at a Madison County Tax Sale auction in the years 2005, 2006, 2007, and 2008 with respect to which a Certificate of Purchase was obtained in response to a penalty rate bid in excess of 0%" (Doc. 34-2, p. 12).  Later, the Consolidated Complaint refers to the class as all persons who owned any parcel of property sold at a tax sale those same years but with respect to which a Certificate of Purchase was obtained in response to a penalty rate bid of 12% or higher and (Doc. 34-2, p. 21).

The question before this Court is whether the claims alleged in the Consolidated Complaint potentially fall within the coverage of any policy issued by the Insurers. Illinois substantive law governs this diversity action, because under choice-of-law rules of Illinois (the forum state), Illinois has the most significant contacts to this action.  *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009), *cert. denied,* 559 U.S. 1006 (2010); *Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 952 n.5 (7th

Cir. 2013); *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.,* **611 F.3d 339, 345 (7th Cir. 2010).**

    **D.**    <u>**Analysis**</u>

    →    **General Principles of Policy Construction**

Under Illinois law, the interpretation of an insurance policy is a legal question properly decided by summary judgment. ***Nationwide Ins. Co. v. Central Laborers' Pension Fund,* 704 F.3d 522, 525 (7th Cir. 2013).** In determining whether an insurer has a duty to defend an insured, the court "may only consider the allegations in the state [court] complaint in concert with the provisions of the Policy." ***Id., citing BASF AG v. Great Am. Assur. Co.,* 522 F.3d 813, 818-19 (7th Cir. 2008); *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 578 N.E.2d 926, 930 (Ill. 1991).**

Stated another way, the undersigned compares the allegations of the Consolidated Complaint with the express language in the insurance policies to decide whether an insurer's duty to defend has been triggered. ***Northfield Ins. Co. v. City of Waukegan,* 701 F.3d 1124, 1129 (7th Cir. 2012).** "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." ***Northfield,* 701 F.3d at 1129, *quoting Gen. Agents Ins. Co. v. Am. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (Ill. 2005).** And the obligation to defend applies even if only one of several theories of recovery is within the potential coverage of the policy. ***ProLink Holdings Corp. v. Federal Ins. Co.,* 688 F.3d 828, 830 (7th Cir. 2012).**

The duty to defend is much broader than the duty to indemnify;  an insurer may refuse to defend its insured only if it is clear from the face of the underlying complaint that the allegations fail to state facts bringing the case within, or potentially within, the policy's coverage.  *Northfield*, **701 F.3d at 1129,** *citing Wilkin*, **578 N.E.2d at 930.  *See also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204 ("insurer's duty to indemnify is narrower than its duty to defend its insured….  the question of whether the insurer has a duty to indemnify the insured … is only ripe for consideration if the insured has already incurred a liability in the underlying claim against it.).**

Furthermore, in analyzing whether an insurer owes a duty to defend, little weight is given to the labels used in the underlying complaint.  *ProLink*, **688 F.3d at 831.**  Instead the court looks to whether the alleged conduct arguably falls within policy coverage. *Santa's Best*, **611 F.3d at 349.**

When the relevant policy language is clear and unambiguous, the court must accord the language its plain and ordinary meaning.   But the court should resolve doubts and ambiguities in favor of the insured.  *Id.  See also John T. Doyle Trust v. Country Mut. Ins. Co.*, **-- N.E.3d --, 2014 WL 1245009, *4 (Ill. App. March 26, 2014);** *Justin Time Transp., LLC v. Harco National Ins. Co.*, **6 N.E.3d 794 (Ill. App. 2014).  *See also American Economy Ins. Co. v. DePaul University*, 890 N.E.2d 582, 587-88 (Ill. App. 2008) (the question of coverage does not hinge on the draftsmanship skills of the plaintiff in the underlying lawsuit, and any doubt with regard to the duty to defend should be resolved in favor of the insured.).**

→   **Specific Allegations of Consolidated Complaint in Underlying Suit**

In the Consolidated Complaint, real property owners such as the Buekers, Virgil Straeter, and Geralyn Lindow (together with other named and putative class members) sue the Lukens and other tax sale purchasers and participants, including former treasurer Bathon, former county clerk Mark Von Nida, and chairman of the Madison County Board Alan J. Dunstan, alleging an improper agreement and illegal conspiracy between the defendants.  The Consolidated Complaint alleges the following.

Treasurer Bathon conspired with the Lukens and other tax purchaser defendants to change the tax sale bidding process from a system of sequential bidding (i.e., a potential tax purchaser would bid 18%, a competing bidder would bid 17%, he could be outbid by a bidder at 16%, and so on) to a system of one-time, simultaneous bidding (a so-called "no trailing bid" policy) which required all bidders to shout their bids out at once.  When all the participating conspirators shouted the statutory maximum of 18% at once, the auctioneer (using a seating chart supplied by Bathon which rewarded his campaign contributors) ensured that one of the defendants was recognized as the winning bidder.  This had a "drastic effect" of eliminating competition and inflating (to 18%) the prices needed to be paid by home owners to redeem their properties.

The underlying plaintiffs seek to recover losses they sustained as a result being forced to pay wrongfully inflated amounts to redeem their properties.   Specifically, they pray for an order refunding to each class member "an appropriate amount of money … measured by the difference of the amount redeemed and the amount that

would have been needed to redeem the property at a reasonable and appropriate penalty rate" (Doc. 34-2, p. 19).

So the Underlying Suit seeks monetary damages -- a refund of excess sums the plaintiffs paid to redeem their properties -- on the theory that inflated interest rates were imposed on them via the wrongful acts of the defendants conspiring to suppress competition in the tax sale process for tax years 2004 through 2007 (i.e., sales held in 2005 through 2008, *see* Doc. 34-2, p. 3).[2]

The issue is whether the Consolidated Complaint states facts bringing the Underlying Suit potentially within the coverage of any policy issued by the Insurers (Defendants in the declaratory judgment action before this Court).   Five insurance companies are named as Defendants here.   The record before this Court plainly demonstrates that three of those did not issue *any* liability policy to the Lukens during the years 2003 through 2009.   The Lukens have offered no evidence that Defendants **Indiana Insurance Company**, **American Economy Insurance Company** or **Liberty Mutual Insurance Company** issued any liability policy to either Robert Luken or Luken Investment Company during this period.   The Insurers have presented evidence establishing that only two of the Defendants -- American States Insurance Company and First National Insurance Company of America -- issued policies to the Lukens during the relevant period (*see* Affidavit of Samantha Punch, Doc. 26, Exh. A).

---

[2]     The Consolidated Complaint explains that during the time in question (i.e., during Bathon's tenure as Madison County Treasurer), the tax sales were held in the November following the close of the prior tax year, so the sale for tax year 2004 was held in November 2005.

If an Insurer did not even issue a policy to the Lukens for the period in question, there is no coverage possible for the Underlying Suit, and that Defendant is entitled to judgment as a matter of law in this declaratory judgment action.  Consequently, the Court will grant summary judgment in favor of Defendants Indiana Insurance Company, American Economy Insurance Company, and Liberty Mutual Insurance Company.  So the Court turns to the policies issued by Defendants American States Insurance Company (ASIC) and First National Insurance Company of America (First National).

The record indicates that ASIC and First National, between them, issued a total of 12 policies containing commercial general liability coverage to Luken Investment Company in the time periods set forth below (*see* Doc. 26, Exh. A):

(1)    ASIC Policy No. 01-CC-148849-5 (April 1, 2002 to April 1, 2003);
(2)    ASIC Policy No. 01-CC-148849-6 (April 1, 2003 to April 1, 2004);
(3)    ASIC Policy No. 01-CC-148849-7 (April 1, 2004 to April 1, 2005);
(4)    ASIC Policy No. 01-CC-148849-8 (April 1, 2005 to April 1, 2006);
(5)    1st Natl Policy No. 01-CC-148849-9 (April 1, 2006 to April 1 2007);
(6)    1st Natl Policy No. 01-CC-148849-0 (April 1, 2007 to April 1, 2008);
(7)    1st Natl Policy No. 01-CH-755883-1 (April 1, 2008 to April 1, 2009);
(8)    1st Natl Policy No. 01-CH-755883-2 (April 1, 2009 to April 1, 2010);
(9)    ASIC Policy No. 01-CH-755883-3 (April 1, 2010 to April 1, 2011);
(10)   ASIC Policy No. 01-CH-755883-4 (April 1, 2011 to April 1, 2012);
(11)   ASIC Policy No. 01-CH-755883-5 (April 1, 2012 to April 1, 2013); and
(12)   ASIC Policy No. 01-CH-755883-6 (April 1, 2013 to April 1, 2014).

In their February 24, 2014 brief (Doc. 28, p. 1), the Lukens peg the period involved in the underlying suits as 2006 through 2009.  The April 2014 Consolidated Complaint (Doc. 34-2, p. 3) seeks recovery of losses relating to properties subjected to tax sale by the Madison County Treasurer in 2005 through 2008.  On May 13, 2014,

the  Lukens filed a memo (Doc. 39) clarifying that they rely on policies #3 (4/1/2004 to 4/1/2005) through #8 (4/1/2009 to 4/1/2010) in this declaratory judgment action.  The Court agrees refers to these in the remainder of this Order as "the Policies."

The record before the Court indicates (*see* Doc. 28, p. 1 and attachments to Punch Affidavit, Doc. 26-1) that the Policies contain the same provisions as to coverage, exclusions, and definitions (the provisions relevant to the motions under review).  Robert Luken and Luken Investment Company are named insureds on the Policies.  The Policies contain a **CGL Coverage Form,** Section I of which includes Coverage A -- Bodily Injury and Property Damage Liability, and Coverage B -- Personal and Advertising Injury Liability (*see, e.g.*, Policy 5, 4/1/06 – 4/1/07; Doc. 26-6, pp. 78-84).

### Coverage A (Bodily Injury and Property Damage Liability) provides:

**1.      Insuring Agreement.**
a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

b.      This insurance applies to "bodily injury" or "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period; and
(3) Prior to the policy period, no insured … knew that the "bodily injury" or "property damage" had occurred….

**2.      Exclusions**
This insurance does not apply to:
**a.      Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property….

**Coverage B (Personal and Advertising Injury Liability) provides:**

**1.      Insurance Agreement**
a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply….

b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period."

The following definitions are found in Section V of the Policies (*see, e.g.*, Doc. 26-

6, pp. 90-93).

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
….
13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
....
14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a.      False arrest, detention or imprisonment;
b.      Malicious prosecution;
c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your "advertisement," or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

….

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

→    **Whether the Underlying Suit Seeks Recovery for "Property Damage"**

In the case *sub judice*, it is clear that the Consolidated Complaint does not allege any "bodily injury" or "personal and advertising injury" as those terms are defined in the Policies. Indeed, it appears the Lukens do not claim coverage under the "bodily injury" or "personal and advertising injury" liability provisions of the Policies. Instead, the Lukens rely on the "property damage" provisions of the Policies.

More specifically, the Lukens contend (*see* Doc. 24, p. 4) that the underlying plaintiffs' allegations potentially fall within the Policies' coverage, because the underlying plaintiffs claim property damage from the tax sale and loss of their properties, or from high penalties preventing the redemption of their properties, or

from high penalties required where the properties were actually redeemed.   Careful review of the allegations of the Consolidated Complaint produces a different conclusion.

The Policies afford liability coverage for sums the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence." Property damage is defined as physical injury to tangible property or loss of the use of tangible property not physically injured.  The Consolidated Complaint does not allege that the underlying plaintiffs suffered *physical injury to tangible property* or the *loss of the use* of *tangible property*.   Rather, the Consolidated Complaint alleges that the underlying plaintiffs (claimants) lost money when an illegal conspiracy by the underlying defendants artificially inflated the amounts the claimants had to pay to redeem their properties and keep title thereto (Doc. 34-2, p. 3).  As a result of the "wrongful acts of those participating in such agreements and conspiracies, the Plaintiffs and each member of the class they represented were tricked, coerced, and/or forced to pay substantially higher amounts to redeem their properties than they would have had to pay absent such conspiracy" (Doc. 34-2, p. 3).

The claimants seek money damages -- a refund of "money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate" (Doc. 34-3, p. 1), recovery of the bond posted by Bathon (Doc. 34-3, p. 1), recovery of "actual damage suffered" plus "costs and reasonable attorneys fees incurred," and "treble

damages" under the Illinois Antitrust Act (Doc. 34-3, p. 5).  Money is not tangible property.  Economic loss is not the loss of the use of tangible property.

For instance, in *Viking Const. Management, Inc. v. Liberty Mut. Ins. Co.*, **831 N.E.2d 1, 7 (Ill. App. 2005),** the Court confirmed:

> The standard policy definition of property damage, which is at issue here, differentiates between physical damage to tangible property and intangible property losses, such as economic interests.  Courts do not consider the latter types of losses to be "property damage" ….

*See also Stoneridge Development Co., Inc. v. Essex Ins. Co.*, **888 N.E.2d 633, 654 (Ill App. 2008) (homeowners'** *economic* **loss from builder's shoddy workmanship was not "property damage" within the meaning of CGL policy);** *State Farm Fire and Cas. Co. v. Tillerson*, **777 N.E.2d 986, 991-92 (Ill. App. 2002) (where underlying complaint sought recovery for diminished value of home and replacement of defective work, this was purely economic loss, no "property damage" was alleged, and no coverage was afforded under policy);** *Travelers Ins. Co. v. Eljer Mfg., Inc.*, **757 N.E.2d 481, 496-500 (Ill. 2001) (tangible property suffers a physical injury when altered in appearance, shape, color or other material dimension; no such physical injury to tangible property takes place from the occurrence of an economic injury).**  The allegations of the Underlying Suit do not potentially fall within the Policies' coverage, because no property damage is alleged.

<span style="color:red">→   **Whether the "Property Damage" was Caused by an "Occurrence"**</span>

Even assuming, for the sake of argument, that the claimants' economic loss constitutes "property damage" under the Policies,  the Consolidated Complaint does

not allege that such property damage was *caused by an occurrence*, as required for coverage.   Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   The Consolidated Complaint repeatedly alleges knowing, willful, and intentional acts by the Lukens and other defendants.

The general allegations on page 3 of the Consolidated Complaint describe the "illegal and improper agreement and conspiracy" of the Lukens and other tax purchaser defendants.   Paragraphs 45 and 46 of the Consolidated Complaint allege that the Lukens knowingly participated in the alleged illegal conspiracy and agreements. The Consolidated Complaint references the guilty pleas by Bathon and other underlying defendants to federal *criminal* charges based on the tax sale scheme or conspiracy (Doc. 34-2, pp. 20-21).   Other portions of the Consolidated Complaint allege willful and outrageous actions by the underlying defendants (Doc. 34-2, p. 25), willful and purposeful conduct (Doc. 34-3, p.2), and willful and wanton conduct (Doc. 34-3, p. 5). Construing the allegations in the light most favorable to the Lukens, the Consolidated Complaint simply does not allege property damage caused by an *occurrence* (i.e., an accident).   Illinois law holds that intentional conduct like that alleged here in the Underlying Suit does not constitute an accident.

For instance, in holding that a claim for negligent misrepresentation was potentially within policy coverage and thus triggered a duty to defend, the Illinois Court of Appeals summarized a line of cases emphasizing the distinction between claims based on negligence (generally covered) and claims based on intentional acts

(generally *not* covered) by CGL policies which insure property damage caused by an occurrence.  In ***USAA Cas. Ins. Co. v. McInerney,* 960 N.E.2d 655, 659 (Ill. App. 2011),** the policy (like the Policies herein) defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but failed to define "accident."   The Court explained:   "The policy did not define 'accident' but Illinois courts have defined an accident "as an unforeseen occurrence, usually of an untoward or disastrous character or an undersigned sudden or unexpected event," and Illinois courts "have focused on whether the injury is expected or intended from the standpoint of the insured."   ***USAA,* 960 N.E.2d at 660, *quoting Country Mutual Ins. v. Hagan,* 698 N.E.2d 271 (1998).**

In ***Allstate Ins. Co. v. Lane,* 803 N.E.2d 102, 106 (Ill. App. 2003),** the Illinois Court of Appeals affirmed the declaration that the underlying complaint alleged intentional acts which did not constitute an "occurrence" in the form of an "accident" under the policy.   The policy in ***Lane*** contained materially the same provision and a virtually identical definition of "occurrence" as the Lukens' Policies.  The Court emphasized that the underlying complaint alleged that the insureds knew of and concealed defects (failed to disclose them in a residential real property disclosure report), and such deliberate acts did not arise from an occurrence within the meaning of the policy:  "the Sterns [the underlying plaintiffs] alleged that the Lanes' failure to mention the leaks or water damage was deliberate, not careless or negligent.  Because the Lanes' failure to inform the Sterns about the known defects was not an occurrence, Allstate owed no duty to defend the Lanes against the Sterns' claims."  ***Lane,* 803 N.E.2d at 106.**

Similarly, in *Stoneridge*, **888 N.E.2d at 654,** the Illinois Court of Appeals held that cracks in foundation of house were not caused by an "occurrence" within the meaning of CGL policy, because they were not an unforeseen occurrence that would qualify as an "accident," but instead were the consequence of defective workmanship by builder. The *Stoneridge* decision pointed out that the Illinois Supreme Court has directed lower courts, in deciding whether something constitutes an accident, to focus *not* on whether the actions were deliberate but instead on whether the person doing the acts intended or expected the result. *Id.,* **888 N.E.2d at 651,** *citing Country Mutual Ins. Co. v. Carr,* **867 N.E.2d 1147 (Ill. 2007), and** *Wilkin,* **578 N.E.2d 926.**

Last year, in *West American Ins. Co. v. Midwest Open MRI, Inc.,* **989 N.E.2d 252, 260 (Ill. App. 2013),** the Illinois Court of Appeals examined an insurance policy that applied to losses from property damage caused by an "occurrence." As in the case at bar, the policy defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Court reiterated that under Illinois law, an accident is an unforeseen occurrence, usually a sudden unexpected event. *West American,* **989 N.E.2d at 260.** "Furthermore, whether an occurrence is an accident depends on "'whether the *injury* is expected or intended by the insured, not whether the acts were performed intentionally." *Id., citing United Nat'l Ins. Co. v. Faure Brothers Corp.,* **949 N.E.2d 1185 (Ill. 2011),** *quoting Lyons v. State Farm Fire & Cas. Co.,* **811 N.E.2d 718, 723 (Ill. App. 2004).**

Here, the Consolidated Complaint certainly alleges that the Lukens/insureds *expected the injury* (the direct results of their actions in connection with the tax sale

process).   The Consolidated Complaint alleges that the tax purchaser defendants intended the consequences of their illegal acts (the injury), which squarely contradicts any interpretation that the injuries to the claimants were accidental.

In other words, application of these principles yields the conclusion that the Consolidated Complaint does *not* allege property damage caused by an "occurrence" (accident).   On this point, the Lukens' arguments miss the mark.   They tender an Affidavit (the basis for their summary judgment and the essence of their position against the Insurers' cross-motion) in which Robert Luken attests that he never conspired or agreed with anyone to fix the tax sales and, at some point in 2008, he even protested the trailing bid tax sale method by letter to Treasurer Bathon.   But it is the *allegations* of the operative complaint in the Underlying Suit which guide and cabin this Court's analysis of the duties under the Policies, not the insured's defense to the underlying claims.

The Consolidated Complaint unquestionably alleges that the Lukens illegally conspired to, purposefully agreed to, and willfully took part in the scheme designed to drive up the interest rates on the claimants' properties. The Consolidated Complaint alleges that the Lukens expected and intended that injury.   Without question, the Underlying Suit does not allege property damage caused by an "occurrence."

The Consolidated Complaint in the Underlying Suit alleges deliberate acts as opposed to unforeseen occurrences or sudden unexpected events (from the perspective of the Lukens).   This is inconsistent with the Policies' definition of occurrence.

Liberally construed, the operative complaint in the Underlying Suit does not contain allegations that even potentially fall within the coverage of the Polices.[3]

→   **Whether the "Expected or Intended Injury" Exclusion Applies**

Assuming, *arguendo*, that the Consolidated Complaint sought recovery for "property damage" (physical injury to tangible property or loss of use of tangible property) caused by an "occurrence" (accident), an exclusion under the Policies would bar coverage for the Lukens.   Section I of Coverage A of the Policies (Bodily Injury and Property Damage Liability) provides:  "This insurance does not apply to … 'property damage' expected or intended from the standpoint of the insured."   This clear unambiguous language means that the Policies here do not cover, or potentially cover, the allegations in the Underlying Suit.

Illinois state and federal courts have construed this exclusionary language (both when included in the definition of occurrence and when included as a separate policy exclusion) to exclude consequences anticipated by the insured.  In ***Mutual Service Cas. Ins. Co. v. Country Life Ins. Co., 859 F.2d 548, 552 (7th Cir. 1988),*** the Seventh Circuit affirmed the district court's determination that liability insurer had no duty to defend its insured in an underlying breach of contract action, because the policies covered liability arising from an accident resulting in damage "neither expected not intended

_____

[3]      Although the prayer for relief in the Consolidated Complaint seeks to recover the refund of money damages for the inflated penalties, the complaint also contains a reference to some property owners who "failing to redeem lost fee-simple to their properties" (Doc. 34-2, p. 20, p. 22).  To the extent that the loss of fee-simple to real property could be construed as the loss of tangle property, that loss was not *caused by an occurrence* (accident) as required for coverage under the Policies, for the same reasons above-described.

from the standpoint of the insured," and the intentional torts alleged in the complaint were deemed to fall outside the scope of such an occurrence.   "The allegations … plainly predicate liability on a theory of intentional misconduct," and "the underlying action falls outside the parameters of both the … policies."   *Id.   See also American States Ins. Co. v. Capital Associates of Jackson County,* 392 F.3d 939, 943 (7th Cir. 2004).

Similarly, in *Thornton v. Illinois Founders Ins. Co.,* **418 N.E.2d 744, 748 (Ill. 1981),** a case interpreting a liability policy covering occurrences (defined as accidents neither excepted nor intended from the standpoint of the insured), the Illinois Supreme Court declared that the policy terms were unambiguous, and they excluded intentional acts of the insured, as such acts would be expected or intended by the insured.

The Consolidated Complaint alleges that the Lukens knowingly engaged in a conspiracy and scheme to decrease competition in the tax sales, and that the claimants were injured thereby.   In other words, the harm suffered by the property owners was not just anticipated by the Lukens, it was intended.   The facts alleged in the Consolidated Complaint plainly fall within the scope of the exclusion for property damage "expected or intended from the standpoint of the insured."   The exclusion precludes coverage for the Lukens under the Policies.

### E.   <u>Conclusion</u>

Under Illinois law, an insurer's duty to defend is determined by comparing the express language of the policy to the allegations of the underlying complaint.   If the complaint alleges facts potentially within policy coverage, the insurer is obligated to defend the insured, even if those allegations are groundless, false, or fraudulent.   An

insurer may justifiably refuse to defend an action against its insured only if it is clear from the face of the underlying complaint that the allegations fail to state facts bringing the case potentially within the policy's coverage. *Netherlands Ins. Co. v. Phusion Projects, Inc.,* 737 F.3d 1174, 1178 (7th Cir. 2013).

In the case at bar, it is clear from the face of the underlying complaint that the allegations fail to state facts bringing the case potentially within coverage of the Policies. First, the Consolidated Complaint seeks a refund for economic loss, not "damages for 'property damage'" (physical injury to tangible property or loss of use of tangible property). Moreover, if there were allegations of property damage, that property damage is not alleged to have been "caused by an 'occurrence'" (accident). Instead, the Consolidated Complaint alleges knowing and willful actions by the Lukens and their codefendants who wrongfully entered in agreements and participated in conspiracies. The allegations of such intentional misconduct do not potentially fall within coverage of the relevant policies. Furthermore, assuming *arguendo* the opposite conclusion, an exclusion under the Policies would preclude coverage for the Lukens. The Policies state that the insurance does not apply to any property damage "expected or intended from the standpoint of the insured." The harm and injury in the Underlying Suit (the higher interest rates paid by the claimants to redeem their properties or the failure to redeem their properties, leaving them in the hands of the tax purchasers) is alleged to have been intended by the Lukens -- the desired result of the alleged bid-rigging scheme. So the exclusion for expected or intended injury would preclude coverage under the Policies.

Simply put, liberally construing the policies, the factual allegations, and the reasonable inferences therefrom in favor of the Lukens, the Court concludes that the Consolidated Complaint does not set forth facts that bring the claims potentially within the coverage of the Policies.  Accordingly, the Insurers need not provide a defense to the Underlying Action.

Finally, the case before this Court (where the facts alleged do not even *potentially* come within the scope of insurance coverage) falls within the general proposition that "where there is no duty to defend, there is also no duty to indemnify." ***American States, 392 F.3d at 941, citing Crum and Forster Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1081 (Ill. 1993).  See also American Family Mutual Ins. Co. v. Enright, 781 N.E.2d 394, 397 (Ill. 2002)("If the insurer owes no duty to defend, then it owes no duty to indemnify because the duty to defend is broader than the duty to indemnify"); Metzger v. Country Mutual Ins. Co., 986 N.E.2d 756, 761 (Ill. App. 2013) ("The duty to indemnify arises only if the insured's activity and the resulting damage actually fall within the policy's coverage.").***  No genuine issues of fact remain, and Defendants are entitled to judgment as a matter of law.

For these reasons, the Court **GRANTS** Defendants/Insurers' January 14, 2014 motion for summary judgment (Doc. 26) and **DENIES** Plaintiffs' January 13, 2014 motion for summary judgment (Doc. 23).  Defendants Indiana Insurance Company, American Economy Insurance Company, and Liberty Mutual Insurance Co. did not issue any policy to the Lukens for the relevant period.  Defendants American States Insurance Company and First National Insurance Company issued the Policies to the

Lukens during the period relevant to the Underlying Suit but do not owe any duty to defend or indemnify the Lukens in the Underlying Suit.  The Clerk of Court **SHALL ENTER JUDGMENT** in favor of all five Defendants herein and against Plaintiffs, Robert Luken and Luken Investment Company.

IT IS SO ORDERED.

DATED May 22, 2014.

s/ ***Michael J. Reagan***
Michael J. Reagan
United States District Judge